UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES M.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant**.

Case No. 1:20-cv-0831-TPK

OPINION AND ORDER

# OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 29, 2020, denied Plaintiff's application for supplemental security income for a limited time period, although Plaintiff was awarded benefits for a later period of time. Plaintiff has now moved for judgment on the pleadings (Doc. 13), and the Commissioner has filed a similar motion (Doc. 14). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Defendant.

## I.  BACKGROUND

    On October 24, 2017, Plaintiff protectively filed his application for benefits, alleging that he became disabled on January 1, 2012. After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on September 19, 2019. Both Plaintiff and a vocational expert, David Van Winkle, testified at that hearing.

    The Administrative Law Judge issued a partially favorable decision on November 7, 2019. He first concluded that Plaintiff had not engaged in substantial gainful activity since his application date. Next, he found that Plaintiff suffered from severe impairments including lumbar facet arthropathy and degenerative disc disease, essential hypertension, lower extremity peripheral vascular disease and ischemial status post bypass graft, pulmonary nodules, mediastinal lymphadenopathy, hypertensive heart disease without heart failure, palpitations, atherosclerosis of the lower extremities, deep vein thrombosis, sarcoidosis, and affective disorder. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that, prior to June 28, 2018 (the date on which the ALJ determined that Plaintiff became disabled), Plaintiff had the residual

functional capacity to perform a reduced range of light work.  He could stand and walk for four hours in a day and could occasionally push, pull, and/or operate foot controls.  Also, he could occasionally stoop, kneel, crouch, crawl, climb stairs, ramps, ladders, ropes, and scaffolds, be exposed to vibrations, unprotected heights and moving machinery parts, and he could frequently balance.  He could also tolerate occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme cold, and extreme heat.  From a mental standpoint, Plaintiff could understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, occasionally deal with changes in a routine work setting, and occasionally deal with the public.  Beginning on June 28, 2018, however, Plaintiff's residual functional capacity was reduced because he needed additional work breaks beyond the customary work breaks, would be off task more than 15% of the workday, and would be absent from work two or more days per month, limitations incompatible with sustaining substantial gainful employment.

The ALJ next determined that Plaintiff had no past relevant work.  According to the testimony of the vocational expert, a person with Plaintiff's residual functional capacity as the ALJ found it to be prior to June 28, 2018, could perform jobs like assembler of medical products, packer inspector, and copy machine operator, and the ALJ so found.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act prior to June 28, 2018.

Plaintiff, in his motion for judgment, asserts this claim: "The ALJ improperly substituted his own medical judgment over that of any physician."  As part of that claim, he argues that the ALJ improperly made a residual functional capacity finding on the basis of bare medical evidence because he had rejected all of the medical opinions concerning Plaintiff's capabilities.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing.  It will then provide a summary of the most important medical records.

Plaintiff, who was 46 years old when he filed his application, first testified that he had a high school diploma but took special educational classes throughout his high school career.  He was trained as a brick mason.  He worked in 2007 and 2008 as a cleaner in a body shop and garage.  At the hearing, he was using a walker which his doctor had prescribed for him, along with a cane, which was prescribed in May of 2018 and which he used constantly before July of 2019.  He could walk only about 20 feet.  He had fallen while using a treadmill as part of physical therapy.

Next, Plaintiff said that he underwent surgery twice for peripheral artery disease.  He also experienced lower back pain which severely limited his ability to bend.  He could sit for two hours before needing to move around.  On a typical day, he sat outdoors or watched television.  He had been assigned a home health aide on May 5, 2018, and she spent two days per week assisting him.  He had never driven a car because he could not pass the driver's license examination.  He was able to use public transportation, though, and did so by himself when he

lived in Alabama prior to moving to Buffalo in 2018.

The vocational expert, David Van Winkle, was first asked to assume that Plaintiff had no past relevant work. He was then asked questions about a person of Plaintiff's vocational profile who could do a limited range of light work in line with the residual functional capacity finding ultimately made by the ALJ. In response, he said that such a person could work as an assembler of medical products, packer inspector, and copy machine operator. He also gave numbers of those jobs as they exist in the national economy. If the person needed to take breaks beyond those customary in the workplace, would be off task for more than 15% of the time, and would miss more than two days of work per month, he or she could not work. Also, the expert testified that the jobs he had identified could not be done if the person needed to use a cane, because all of them involved some amount of carrying and lifting.

Because Plaintiff's sole claim of error relates to the correlation (or lack of correlation) between the ALJ's residual functional capacity finding and the expert evaluations, the Court's review of the evidence will focus primarily on what the various experts had to say. The Court begins with the opinion expressed by the state agency reviewers, Drs. Amason and Williams.

Dr. Amason reviewed records of treatment from 2016 and 2017 which dealt primarily with Plaintiff's claim of back and shoulder pain. X-rays taken in 2017 did not show any acute findings. Dr. Amason noted that Plaintiff walked with a normal gait but had some paraspinal tenderness. His conclusion, issued on January 19, 2018, was that any physical impairment was not severe. (Tr. 136). A psychiatric reviewer, Dr. Williams, found that there were no documented mental impairments. (Tr. 137).

The next two evaluations were used by the ALJ to support his finding that Plaintiff became disabled on June 28, 2018. One of those opinions, from Dr. Clabeaux, described Plaintiff's medical condition as nonreconstructible peripheral arterial disease with disabling claudication, and indicated that Plaintiff was very limited in a number of areas and that he could not walk more than twenty feet. (Tr. 435-36). The opinion was issued in late 2018 but indicated that the restrictions had been present since June 28, 2018. The other, based on a consultative examination which was ordered by the ALJ following the administrative hearing, came from Dr. Schwab, who performed that examination on September 25, 2019. Plaintiff described back pain and peripheral vascular disease as well as asthma. He was using a walker which Dr. Schwab believed was necessary. On examination, straight leg raising was positive bilaterally but there were few other abnormalities. Plaintiff's ability to bend, lift, carry light objects, and to sit, stand, walk, push, pull, operate foot controls, and climb ladders was characterized as "marked." He also needed to avoid unprotected heights, moving mechanical parts, and driving. (Tr. 1035-38).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

As noted above, Plaintiff has made only a single claim of error.  Noting that the only two evaluations which predated the date on which Plaintiff became disabled indicated that he had no severe physical impairment and no medically determinable mental impairment, Plaintiff argues that the ALJ had no reasonable basis for making the detailed residual functional capacity finding contained in the administrative decision.

The ALJ explained his decision this way.  First, he articulated the detailed residual functional capacity finding described above, and then concluded that the objective medical evidence did not provide strong support for Plaintiff's claim of disabling symptoms prior to June 28, 2018.  For example, when examined in October, 2017, Plaintiff did not report leg pain and he had good circulation in his left leg.  He had additional examinations in January and February, 2018, at which he reported significant back pain relieved to some extent by chiropractic manipulation.  An MRI done at that time showed abnormalities in the lumbar spine.  He continued to be treated for chronic low back pain.  The occlusion in his left femoral artery was detected in May, 2018. Although the state agency reviewers did not find any physical or mental limitations, the ALJ rejected their opinions as inconsistent with evidence that they did not have at the time they expressed those opinions and as not consistent with records of diagnostic

imaging.  He then noted that Plaintiff's description of his activities of daily living also did not support his claim of disabling symptoms, and reasoned that Plaintiff was able to perform some level of work activity during that time frame.  In determining that Plaintiff became disabled on June 28, 2018, the ALJ relied on the findings made by Dr. Clabeaux, on an MRI done in October 12, 2018 showing herniated discs in the lumbar spine, on an arterial ultrasound done in November, 2018 showing that Plaintiff had left femoral artery disease with pain after walking six to ten minutes, on a study indicating chronic occlusion of that artery, and on the 2019 evaluation done by Dr. Schwab.

Plaintiff is correct that the ALJ's residual functional capacity finding did not track any particular medical opinion.  This Court has held that an ALJ may sometimes err when making such a finding, but that there is no error when a residual functional capacity finding does not mirror exactly limitations found in the medical opinions but still finds substantial support in the record.  *See, e.g., Riley v. Comm'r of Social Security*, 2019 WL 5287957, \*4 (W.D.N.Y. Oct. 17, 2019), *citing Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Each party has cited to decisions which either invalidate or uphold an ALJ's decision when the residual functional capacity finding had not been drawn directly from the medical opinion evidence.  *See, e.g., Perkins v. Berryhill*, 2018 WL 3372964, \*3 (W.D.N.Y. July 11, 2018) ("even though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself,'" *quoting Wilson v. Colvin*, 2015 WL 1003933, at \*21 (W.D.N.Y. Mar. 6, 2015); *but see Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where ... 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal medical opinion is not necessarily required.").  The existence of seemingly inconsistent decisions well illustrates the point that there is no hard and fast rule which applies to such situations and that the Court must make a decision based on the specific facts of each case.

Here, although the state agency reviewers' opinions were the only ones which directly assessed Plaintiff's functional capacity prior to June 28, 2018, they are not the only medical opinion in the record, nor the only evidence which speaks to Plaintiff's functional abilities prior to that date.  As the Commissioner notes, there are a number of medical records which, reasonably interpreted, show that Plaintiff had a higher level of functioning in the months between his application date and the date on which the ALJ found him to be disabled, and Plaintiff's activities of daily living during that period of time also shed light on his ability to function.  All of this evidence supports the ALJ's determination that Plaintiff had a greater ability to stand and walk during that time period without experiencing significant pain and that he was actually encouraged to get more exercise.  The ALJ was therefore entitled to make a "common sense" determination that, prior to June 28, 2018, Plaintiff had the ability to stand and walk for a much greater length of time than he did after his femoral artery became totally occluded and his back condition worsened.  As for the other restrictions contained in the residual functional capacity finding, the Court concludes that they are reasonably related to the

limitations which were found by Drs. Schwab and Clabeaux (although those limitations were more extreme based on the worsening of Plaintiff's condition).  The ALJ evaluated Plaintiff's abilities in the same areas and reasonably found that he had somewhat more capabilities to perform postural activities in the months prior to June 28, 2018.  As to the mental restrictions, which Plaintiff does not directly address, any error in that regard is harmless because the ALJ could reasonably have found that Plaintiff had no significant mental restrictions, a finding which would have likely led the vocational expert to identify more, not fewer, jobs which Plaintiff could have performed.

In short, this is not a case where the ALJ had nothing to go on but raw medical data in formulating a residual functional capacity finding.  Rather, it is a case where the ALJ reasonably reconciled all of the medical opinions with the pertinent medical findings, as well as other evidence, in reaching his residual functional capacity finding.  As such, the Court finds that the ALJ did not err, and therefore concludes that his decision must be affirmed.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 13), **GRANTS** the Commissioner's motion (Doc. 14), and directs the Clerk to enter judgment in favor of the Defendant.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**